# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | |
|---|---|
| **BRENDA SIPES CAPERTON,** § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> **NANCY A. BERRYHILL,** § <br> **Deputy Commissioner for Operations** § <br> **Social Security Administration,** § <br> § <br> Defendant. § | Civil Action No. 7:17-cv-00126-O-BP |

## MEMORANDUM AND OPINION

Plaintiff Brenda Sipes Caperton ("Caperton") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits under Titles II and XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the Court **AFFIRMS** the Commissioner's decision.

### I.    STATEMENT OF THE CASE

Caperton filed an application for disability benefits on August 1, 2014. Tr. 13. She alleged a disability onset date of July 1, 2009. *Id.* Caperton alleged limiting conditions of paranoia, bipolar, memory loss, depression, anxiety/panic attacks, left hip pain/difficulty walking, numbness in fingers, manic depression, recovery from drug addiction, and vision loss. Tr. 81, 284. The Commissioner initially denied her benefits on January 5, 2015. Tr. 90. The Commissioner denied her benefits upon reconsideration on May 7, 2015. Tr. 116. Caperton requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Jodi B. Levine on February 11, 2016. Tr. 13, 43. Caperton appeared in Wichita Falls, Texas, and the ALJ presided

over the hearing from Oklahoma City, Oklahoma. *Id.* A non-attorney representative, Jeffrey L. Owen, represented Caperton at the hearing. *Id.* Vocational Expert ("VE") Clifton A. King, Jr., testified at the hearing. *Id.* Two impartial medical experts, Dr. Arthur Brovender and Dr. Patricia Griffin, also testified at the hearing. *Id.* At the hearing, Caperton amended her disability onset date to August 1, 2014. Tr. 13, 48. The ALJ issued her decision on March 14, 2016, finding that Caperton was not entitled to disability benefits. Tr. 25–26.

In her decision, the ALJ employed the statutory five-step analysis. At step one, she found that Caperton had not engaged in substantial gainful activity since August 1, 2014, the amended alleged disability onset date. Tr. 16, Finding 1. At step two, the ALJ found that Caperton had the severe impairments of bipolar disorder, generalized anxiety disorder, and polysubstance dependence in partial remission. Tr. 16, Finding 2. The ALJ found that the medical evidence failed to establish that Caperton had any severe physical impairments. Tr. 18. At step three, the ALJ found that Caperton's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404(P)(1). Tr. 18, Finding 3. The ALJ therefore determined that Caperton had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but the following nonexertional limitations: able to understand, remember, and carry out simple and detailed instructions; could have occasional interaction with coworkers and supervisors; and occasional interaction with the public of a brief nature (incidental and superficial). Tr. 19, Finding 4.

At step four, the ALJ found that Caperton's past relevant work as a fast food worker, kitchen helper, and polystyrene molding machine tender, as these jobs are customarily performed in the national economy, does not require any activities that would be precluded by Caperton's RFC. Tr. 25, Finding 5. The ALJ therefore found that Caperton was capable of performing her

past relevant work. *Id*. Because the ALJ determined at step four that Caperton could perform her past relevant work, she did not continue to step five. The ALJ found that Caperton was not under a disability at any time through the date of her decision on March 14, 2016. Tr. 25, Finding 6.

The Appeals Council denied Caperton's request for review on February 9, 2017. Tr. 1–5. Therefore the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II. FACTUAL BACKGROUND

Caperton was born on July 28, 1965, and was forty-nine years old on her alleged disability onset date. Tr. 81, 93, 105, 118. The highest grade of schooling she reached was part of eleventh grade. Tr. 49.

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to gain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R.

3

§ 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite [her] physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove [she] in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198.)

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV. ANALYSIS

Caperton raises two issues on appeal: (1) that the ALJ erred in finding that Caperton had no severe physical limitations and (2) that the ALJ erred in determining that Caperton could perform her past relevant work.

**A. The ALJ applied an incorrect standard when finding that Caperton had no severe physical limitations, but the error was harmless because the ALJ considered Caperton's physical limitations after that step.**

At step two of the five-step process, the ALJ determines whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). As defined in the Social Security Regulations ["Regulations"], a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Finding that a literal application of these regulations would be inconsistent with the Social Security Act, the Fifth Circuit has held that an impairment is not severe 'only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.'" *Hall v. Astrue*, No. 3:11-CV-1929-BH, 2012 WL 4167637, at *9 (N.D. Tex. Sept. 20, 2012) (citing *Stone*, 752 F.2d at 1101, 1104–05).

5

The Fifth Circuit then held that it would "in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. If the ALJ does not use the correct standard, the court must remand the claim to the Commissioner for reconsideration. *Id.*; *see also Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (remanding in accordance with *Stone*). Remand is not required simply because the ALJ did not use *Stone*'s "magic words," but only if, upon a careful reading of the ALJ's opinion, the ALJ did not use the correct "slight impairment" standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *Taylor v. Astrue*, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *report and recommendation adopted*, No. 3:10-CV-1158-O, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), *aff'd*, 480 Fed. App'x 302 (5th Cir. 2012) (holding that ALJ applied the correct standard, though he only quoted the Regulation and not *Stone*, because the medical evidence was "entirely consistent" with a finding of nonseverity).

Caperton argues that the Court should follow *Scroggins v. Astrue*, in which Magistrate Judge Irma Carrillo Ramirez automatically remanded a case based on a *Stone* error, holding that the Fifth Circuit did not leave the lower courts with any discretion to determine whether such an error was harmless. 598 F. Supp. 2d 800, 806 (N.D. Tex. 2009). A later case decided by Judge Ramirez, however, shows that *Scroggins*'s holding is abrogated, and automatic remand is only required in cases where the ALJ used the incorrect standard and did not proceed past step two. *Holmes v. Astrue*, No. 3:11-CV-2634-G BH, 2013 WL 638830, at *10 (N.D. Tex. Jan. 25, 2013), *report and recommendation adopted*, No. 3:11-CV-2634-G BH, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013); *see also Jones v. Astrue*, 851 F. Supp. 2d 1010, 1018 (McBryde, J.) (N.D. Tex. 2012)

6

(citing cases). "... *Stone* merely reasons that the regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality." *Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992). In cases where the ALJ proceeded to the other steps, courts in the Northern District of Texas apply a harmless-error analysis to decide whether the ALJ's *Stone* error requires remand. *Holmes*, No. 3:11-CV-2634-G BH, 2013 WL 638830, at *10. Harmless error does not apply in "the situation wherein the ALJ commits a *Stone* error by applying an incorrect severity standard, explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments." *Jones v. Astrue*, 821 F. Supp. 2d 842, 850 (Toliver, J.) (N.D. Tex. 2011). Though the Commissioner does not cite any of these cases in her response brief, the undersigned nevertheless concludes that a harmless-error analysis should be applied in cases that go beyond step two, following precedent from other courts in the Northern District.

When making her step-two determination, the ALJ stated that "the claimant's left hip pain, hand issues, obesity, thyroid condition, and vision issues, are not severe impairments because they cause no more than mild limitations, if any, in the claimant's work-related abilities." Tr. 18. The ALJ does not cite *Stone* at any point in her opinion, nor does she make an express statement of the *Stone* "slight impairment" standard. *See* Tr. 13–26; *Stone*, 752 F.2d at 1106. The ALJ's statement that Caperton's impairments are not severe "because they cause no more than mild limitations, if any, in the claimant's work-related abilities" is not the same standard as "a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Tr. 18; *Stone*, 752 F.2d at 1101. Certainly, the ALJ's use of "if any" suggests doubt that Caperton has any physical limitations, but the *Stone* standard is more strict. A

7

condition that causes no more than mild limitations on Caperton's work-related abilities is not the same as one that would not interfere at all. The ALJ clearly misstated the severity standard required by *Stone*.

Therefore the Court will proceed to the harmless-error analysis. The ALJ continued past step two in Caperton's case and considered the effects of Caperton's mental impairments on her ability to work. Tr. 18–25. The ALJ also, if less extensively, considered the effects of Caperton's physical impairments on her ability to work when making the RFC determination. *Id.* Caperton essentially concedes this by arguing extensively in her brief against the ALJ's evaluation in her RFC determination of the physical-impairment evidence. *See* ECF No. 17 at 11–16.

The ALJ stated that, in making her RFC determination, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," though this statement is not clear as to whether the ALJ means both physical and mental symptoms. Tr. 19. At this step, the ALJ repeated Caperton's claim of hip pain and numb fingers, and stated that Caperton's "physical impairments are addressed above," presumably referring to the step-two determination containing the *Stone* error, as it is the only prior section of the opinion addressing Caperton's physical impairments. *See* Tr. 20. When reviewing the medical evidence relevant to the RFC, the ALJ quoted the opinion of consultative physician Dr. Zarghouni, who opined on both Caperton's mental and physical impairments. Tr. 24. The ALJ stated that she gave Dr. Zarghouni's opinion "very little weight," and briefly explained that later examinations do not show sensory loss or decreased range of motion. *Id.* The ALJ instead gave great weight to Dr. Brovender, noting Dr. Brovender's conclusion that Caperton had no severe physical impairment. Tr. 23. The ALJ also noted that Caperton alleged that her physical condition limited her daily activities, though the ALJ did not find this allegation credible.

8

Tr. 23–24. Despite utilizing the wrong standard at step two, the ALJ clearly considered and rejected Caperton's claims of physical limitations based on the evidence when making her RFC determination. Therefore the ALJ's misstatement of the *Stone* severity standard was harmless because she did not reject Caperton's claims at that step. Remand is not warranted on this ground.

**B.     While the ALJ committed multiple errors in her determination that Caperton could perform past work, the errors do not require reversal.**

**i.     The ALJ erred in concluding that Caperton could perform her past work as a fast food worker, but the ALJ did not err in finding she could work as a kitchen helper and polystyrene molding machine operator.**

The Social Security Administration uses the Dictionary of Occupational Titles ("DOT") as evidence to determine whether a claimant can do past relevant work, given the claimant's RFC. 20 C.F.R. § 404.1560. If a claimant is able to do even some of her past relevant work, then the claimant is not disabled. *Smith v. Astrue*, 278 Fed. App'x 395, 398 (5th Cir. 2008). The claimant has the burden of proving an inability to perform former work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).

The ALJ found that Caperton had past relevant work as a fast food worker, DOT #311.472-010; kitchen helper, DOT #318.687-010; and polystyrene molding machine operator, DOT #556.685-062. Tr. 25. The ALJ then found that Caperton could do all these jobs as generally performed, rather than as actually performed, because Caperton did not "report adequate information to determine how the claimant actually performed the job." *Id.* While the ALJ did not explicitly state that she relied on the VE's testimony for this finding, the VE testified that a hypothetical individual with Caperton's RFC could do the jobs of kitchen helper and polystyrene molding machine operator, but not fast food worker. Tr. 73–74.

The parties agree that the ALJ erred in finding that Caperton could perform her past work as a fast food worker. ECF No. 17 at 18–19; No. 18 at 8. As Caperton notes, she had not worked

9

at that job long enough to learn it nor had she earned enough at the job for it to qualify as substantial gainful activity, as required by the Regulations. ECF No. 17 at 18–19 (citing *Copeland v. Colvin*, 771 F.3d 920, 926 (5th Cir. 2014) (holding that the Commissioner must rebut the presumption that a job does not count as substantial gainful activity if earnings are below the threshold set forth in 20 C.F.R. §§ 404.1574(b)(2) and 416.974(b)(2)). In addition, the VE testified that a person with Caperton's RFC could not perform the job of fast food worker. Tr. 74–75.

Caperton then argues that the ALJ erred in finding that Caperton could perform her past work of polystyrene molding machine operator and kitchen helper because there was no evidence in the record that Caperton actually performed those jobs. ECF No. 17 at 17–18. Caperton argues that the documentary evidence she provided says only that she worked in "production" at a place she alternately calls Texas Recreation and Labor Ready, and the ALJ mischaracterized this job as polystyrene molding machine operator. ECF No. 17 at 18; Tr. 394, 306, 363. Caperton next argues that the ALJ mischaracterized her job at Sheppard Air Force Base as a "kitchen helper" because Caperton called it a "second cook" in her work history report, and the DOT's definition of "kitchen helper" does not involve cooking. ECF No. 17 at 17–18; Tr. 363. Essentially, Caperton asks the Court to hold in her favor based on her own failure to provide detailed information on her work history.

The ALJ utilized the services of a VE at Caperton's hearing in classifying Caperton's work. Tr. 73–74. That VE recognized that the "work history was rather scant." Tr. 73. The VE testified that he had toured Texas Recreation, and it was his opinion that Caperton's vague classification of her job as "production" meant that she was employed as a polystyrene molding machine tender. Tr. 74. The VE was also the one who classified Caperton's job at Sheppard Air Force Base as a

10

kitchen helper. *Id.* Caperton provided no testimony concerning her work, nor did her representative object to the VE's testimony. *See* Tr. 79.

The ALJ properly utilized a VE to classify Caperton's past work. *Kishwar v. Colvin*, No. CV H-15-2728, 2016 WL 4154716, at *8 (S.D. Tex. Aug. 3, 2016) ("The regulations further provide that an ALJ may consult a VE to determine the proper characterization of the claimant's prior work . . . ."); *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)) ("The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."). The ALJ then held, based on the VE's testimony and the record, that Caperton could do these jobs as generally performed, so any lack of detail as to how Caperton actually performed these jobs is irrelevant. *Dye v. Astrue*, No. 13-00220-BAJ, 2015 WL 410689, at *8 (M.D. La. Jan. 29, 2015).

Caperton had the ability to provide contrary evidence regarding her past relevant work at any stage of this process and did not do so. Additionally, Caperton had the opportunity at the hearing to object to any mischaracterization by the VE, but did not do so. *See Holland v. Colvin*, No. 3:14-CV-2964-K-BH, 2015 WL 5437727, at *13 n.4 (N.D. Tex. Aug. 31, 2015), *report and recommendation adopted*, No. 3:14-CV-2964-K, 2015 WL 5439051 (N.D. Tex. Sept. 15, 2015), *aff'd*, 652 Fed. App'x 266 (5th Cir. 2016) ("To the extent Plaintiff disagreed with the VE's characterization of her prior work, she was obligated to press the issue on cross-examination."); *Kishwar*, No. CV H-15-2728, 2016 WL 4154716, at *9 ("To the extent [the claimant] disagreed with the VE's characterization of her prior work and discrepancies between her RFC and her prior work, she was obligated to raise the issue on cross-examination."); *see also Carey*, 230 F.3d at 146–47 ("Moreover, claimants should not be permitted to scan the record for implied or

unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

Caperton had numerous avenues to correct any claimed error of the ALJ or the VE, so she cannot only now assert that any conflict with the vague work history that she provided creates reversible error. It was Caperton's burden to prove that she could not do her past relevant work, as actually or generally performed, and she did not satisfy that burden. *Villa*, 895 F.2d at 1023. The ALJ properly found, based on the evidence in the record and the testimony of the VE, that Caperton could perform her past work as generally performed. Reversal is not warranted on this ground.

  ii. **The ALJ erred by not asking the VE whether his testimony conflicted with the DOT, but such error was harmless.**

Social Security Ruling 00-4p provides in relevant part:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

2000 WL 1898704, at *2 (Dec. 4, 2000). The Fifth Circuit has held that it is error for an ALJ not to ask a VE whether his testimony is consistent with the DOT. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). The claimant must show prejudice resulted from the error in order for the Court to remand. *Id.* at 592–93 (citing *Carey*, 230 F.3d at 142).

The ALJ did not ask the VE whether his testimony was consistent with the DOT, and she thereby committed error. *See* Tr. 73–78. While Caperton noted this error in her brief, the Commissioner did not argue this point. ECF No. 17 at 19; No. 18 at 8–9. Nevertheless, because

Caperton failed to make any argument that the ALJ's error resulted in prejudice, and none is apparent from the record, reversal is not warranted on this ground.

## V. CONCLUSION

For the foregoing reasons, the undersigned **AFFIRMS** the Commissioner's decision.

It is so **ORDERED** on April 19, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE